## T. D. LEWIS v. METCALF, MOORE & CO.

1. LOCAL USAGE—*When Binding—When Not.* A local usage in a particular market is not binding on persons dealing in such market where it appears that neither of the parties to the transaction intended to comply with such usage. The only ground on which a local usage different from the general custom can be held binding is, that the parties who deal in the place where such usage prevails are presumed to have contracted with reference to it, and in this case the facts negative such presumption; and *query*, whether any such uniform usage is shown by the evidence as would be binding on parties dealing at the Kansas City stock yards.

2. AGENT—*Revocation of Authority—Notice—Admissions of Agent.* After the authority of an agent has been revoked and actual notice of such revocation has been given to a party dealing with him, the admissions and declarations of such agent thereafter made are not binding on his principal, nor admissible in evidence against him; and in this case the acceptance by the agent, after the revocation and notice thereof of his agency, of moneys due the principal, in payment of the personal debt of the agent, does not affect the right of the principal to collect the sum due him.

*Error from Wyandotte District Court.*

THIS action is submitted with No. 7054, between the same parties, just decided. In this case the petition alleges, that on the 6th day of April, 1888, W. H. Morris, of Crawford county, Kansas, was the owner of 200 head of hogs kept on his farm in that county; that on said day he was indebted to the plaintiff in the sum of $2,000, for which he executed two promissory notes, and secured the same by a chattel mortgage on said hogs; that on the 10th day of October, 1888, Morris was authorized and directed by the plaintiff to sell the hogs and account to the plaintiff for the proceeds; that pursuant to such authority, on the last-named day he shipped the hogs to the defendants, who were partners, engaged in the live-stock commission business at Kansas City; that the defendants sold the hogs, and failed to pay over the proceeds thereof either to the plaintiff or his agent, Morris, and that the indebtedness from Morris to the plaintiff still remains unsatisfied. The

defendants answered, admitting the authority of Morris to sell the hogs; that he did consign them to the defendants to be sold, and that said defendants received and sold them in pursuance of the directions of Morris; that they had no knowledge at the time they were so received and sold of the existence of plaintiff, or of any rights he might have in the property; that the proceeds were remitted and paid to Morris, and accepted by him. The answer also pleaded the judgment in the other case in bar of the plaintiff's recovery in this. The case was tried without a jury, and the facts were found specially.

It appears from the findings that the mortgage was executed by Morris to the plaintiff, as alleged, to secure two notes for $1,000 each, and was duly filed for record in Crawford county, in which the property was located, on the 19th day of April, 1888; that the hogs were shipped by Morris on October 10, 1888, to the defendants at the Kansas City stock yards for sale, and were by them sold for $823.01; that by reason of a mistake on the part of defendants' clerk, a delay occurred in transmitting the proceeds; that on October 17, Morris inquired by telegram what had become of the stock; that on said day the proceeds were remitted by the defendant to said Morris, by placing the same in a bank at Kansas City to the credit of the Farmers' Bank, at McCune, for the use of W. H. Morris; that the bank at Kansas City immediately notified the Farmers' Bank at McCune of such credit, and the bank at McCune immediately placed the amount thereof to the credit of Morris, by indorsing it as a payment upon his note held by the bank; that McCune was the place nearest the residence of Morris, and was the place where he did his banking; that the bank held Morris's overdue note for about $1,000; that the bank afterward sued Morris for the balance due on the note, and Morris pleaded as a defense that the credit so made paid the whole of the note; that the balance sued for was usurious interest; that Morris accepted the credit in the bank, and ratified the application of the same to the payment of his note. The court further found: "The manner in which the money was transmitted by defendants to said Morris was the

general, usual and ordinary way and custom of sending or re-
mitting the proceeds of stock sold at the Kansas City stock
yards, and was reasonable and safe, although in the only other
transaction with Morris the defendants had paid him in checks
at their office." "Shortly after the receipt by Morris of no-
tice that the proceeds of said hogs had been transmitted to
him through the Farmers' Bank of McCune, Kas., he notified
the defendants by telegram that he would not accept such
credit in the Farmers' Bank as payment of said money, saying
that payment should be made by check to T. D. Lewis [the
plaintiff], with account sales. The defendants then notified
Morris that they would mail checks as he requested, upon re-
turn of certificate of deposit. The certificate of deposit re-
ferred to in the last finding was sent to said Farmers' Bank,
and not to Morris, and said Morris had no actual control over
it." "That before the commencement of this action, plaintiff,
through his attorneys, notified defendants of his mortgage on
said hogs, and demanded the same or the proceeds of their
sale; that the defendants designated the National Bank of
Kansas City and the Farmers' Bank of McCune, Kas, as the
mediums through which payment should be made to Morris."
The court also found that the parties in the former suit were
the same as in this one, and the subject-matter therein con-
tested was the same; but this last finding was, on motion of
the plaintiff, set aside by the court. The court thereupon
rendered judgment in favor of the defendants. The plaintiff
brings the case to this court.

*Hutchings & Keplinger,* for plaintiff in error:

The only question in this case is this: Where an agent
sells the goods of his principal, can a mere representative of
the broker who negotiated the sale for the agent, and which
representative was appointed after the sale for the sole pur-
pose of forwarding or paying the proceeds of such sale to the
agent, appropriate, without the consent of either principal or
agent, the proceeds of such sale as a credit on a past-due in-
debtedness of such agent to himself, and, upon being sued by

the principal for such proceeds, successfully plead such appropriation as payment to the agent? That an agent cannot, even by express agreement with his creditor, appropriate his principal's property or funds to pay his individual debt to such creditor, surely is "primer" law. That where the debtor of the principal is the creditor of the agent, payment to the principal cannot be effected by giving credit to the agent on his individual indebtedness, and charging the amount to the principal, would seem, if possible, still more elementary; yet counsel for defendants are practically contending that such transaction does constitute payment, notwithstanding both the principal and agent object to it.

The Farmers' Bank in this case, at most, is only the agent of defendants. If the Farmers' Bank can pay the debt due from Morris out of the moneys of Lewis, then, *a fortiori*, defendant could have done the same had Morris been indebted to them, as could also the National Bank of Kansas City and the Stock Yards Bank, through whose hands the funds passed before they reached said Farmers' Bank. The supreme court of Kansas says: "It is a well-established doctrine that an agent cannot pay his individual debts out of claims due his principal." *Smith v. Morrill,* 39 Kas. 665; *Deatherage v. Henderson,* 43 id. 684; *Burrill v. Raymond,* 28 id. 417; *Greenwood v. Young,* 50 Mo. 52; 7 Wait, Act. & Def. 384; 1 id. 283, *et seq.; Stewart v. Woodard,* 28 Am. Rep. 488; Whar. Ag., §§ 210, 723, 762, 763, 789; *Farmers' Bank v. King,* 98 Am. Dec. 220; *Union Stock Yards Bank v. Gillespie,* 11 Sup. Ct. Rep. 118; *National Bank v. Insurance Co.,* 104 U. S. 71. And the same authorities hold, in substance, that a debt due from the agent cannot be set off against a debt due to the principal, although such debt due to the principal may have been created by a contract of the agent. See, also, Chitty, Cont. 306; *Burnham v. Abbott,* 16 Vroom, 531; *George v. Clogett,* 2 Smith Ld. Cases, 9th ed., p. 1359, and Am. Notes, p. 1364.

One of the defendants' witnesses testified, over our exceptions on the subject, as to the custom or usage of live-stock brokers in remitting proceeds of sales, and the court found

that this particular remittance was according to the usual custom at the stock yards, but this was not a general custom. It was a special custom at a particular place. There is no evidence that Morris knew of such custom. On the contrary, the defendants, in their prior dealings with Morris at these same stock yards, had not followed this alleged custom. Until Morris or plaintiff consented to accept the bank as their debtor, the relationship of creditor to it could not be forced upon them. *Strayhorn v. Webb*, 64 Am. Dec. 580. "A custom or usage must be reasonble, and a custom is not reasonable if an honest or right-minded man would deem it unfair or unrighteous." *Randall v. Smith*, 18 Am. Rep. 206, 207.

Again, the evidence, instead of establishing, disproves the alleged usage. "A custom, to be good, must be general, uniform, certain, and notorious; and, to be binding on the parties to a transaction, must be directly known to them, or so universal and general in its character that knowledge may well be conclusively presumed." *Walsh v. Transportation Co.*, 52 Mo. 438; *Freight & Cotton Press Co. v. Stannard*, 44 id. 71. That local usages must be known to both parties, see *Ore & Iron Co. v. Blako*, 12 Sup. St. Rep. 733; *Mayor v. Strouse*, 6 Sawy. C. Ct. 204. As clearly in point as to the insufficiency of the evidence to prove a controlling usage, we call attention to an instruction approved by the court in *Scudder v. Bradbury*, 106 Mass. 424. For a very instructive case as to the necessity for showing notice of a local custom, see *Walls v. Bailey*, 49 N..Y. 464; also see 17 Fed. Rep. 633. That proof of local usage in New York city does not raise any presumption that such usage was known by parties residing at a distance, see *German American Ins. Co. v. Commercial Fire Ins. Co.*, 11 S. Rep. 118, citing Lawson on Customs and Usages, §§ 17, 19, 26. See, also, *Wallace v. Morgan*, 23 Ind. 399.

*W. C. Scarritt*, for defendants in error:

Morris lawfully shipped the hogs to defendants, commission merchants, at the stock yards, for sale, without giving any

instructions as to how the proceeds should be remitted to him at McCune. What is the implied contract between the parties arising from these facts, which shall measure out and prescribe the duty of defendants, both to Morris and plaintiff? It is that defendants shall use due diligence to sell the hogs for the best advantage in the market, that they shall receive a reasonable compensation for their services, and shall transmit the net proceeds of the sale, according to the settled usage and custom of commission merchants in their market, to Morris at McCune. The general custom or usage of the trade in reference to the subject-matter of contract becomes a part of the contract. *Smythe v. Parsons,* 37 Kas. 79.

The Am. & Eng. Encyc. of Law, (vol. 3, p. 319, note,) states the rule in the following language:

"A person who deals in a particular market must be taken to deal according to the known, general and uniform custom or usage of that market. He who employs another to act for him in that particular place or market must be taken as intending that the business to be done will be done according to the usage and custom of that place or market, whether the principal in fact knew of the usage or custom or not."

Mr. Mechem, in his late work on Agency (§ 485), uses substantially the same language. See, also, *Potter v. Morland,* 3 Cush. 384; *Bailey v. Bensley,* 87 Ill. 556; *Sahlien v. Bank of Lonoke,* 16 S. W. Rep. (Tenn.) 373; *Goodenow v. Tyler,* 7 Mass. 36; same case, 5 Am. Dec. 22.

The court found as a fact that the custom followed by defendants was reasonable and safe, and, there being ample evidence to support it, this court will not disturb the finding. *Weil v. Eckard,* 37 Kas. 696; *Bentley v. Brown,* 37 id. 14; *The State v. Baldwin,* 36 id. 4.

Morris consigned these hogs as his own, and defendants, acting in good faith and without any knowledge of Lewis or of his alleged claim to the proceeds of the sale, remitted the proceeds according to the usual custom to Morris at McCune, which fund was there seized and held as the property of Morris before any knowledge came to defendants of plain-

tiff's claim.    Under this state of facts, even though plaintiff
were the owner of the hogs, he cannot recover.   See *Rosser v.
Darden*, 7 S. E. Rep. (Ga.) 920; *Hutchinson Mfg. Co. v. Henry*,
44 Mo. App. 269; *Hays v. Warren*, 46 Mo. 189.

In *Bicknor v. Buck*, 58 Ind. 354, the court says: "Pay-
ment to an authorized agent of a creditor by the debtor is
equivalent to payment to the creditor himself." *Bank of
Kansas City v. Mills*, 24 Kas. 431; *Boot & Shoe Co. v. Mar-
tin*, 45 id. 765; *Rosser v. Darden*, 7 S. E. Rep. (Ga.) 920;
*Hutchinson Mfg. Co. v. Henry*, 44 Mo. App. 269.

The opinion of the court was delivered by

ALLEN, J.: The only substantial controversy in this case
is as to the legal effect of the transaction by which the defend-
ants placed the proceeds of the hogs sold by them to the credit
of W. H. Morris in the McCune bank and the subsequent ac-
ceptance by Morris of the application of the proceeds to the
payment of his individual debt to the bank.    While counsel
for the defendants in his brief and on the argument challenges
the good faith of the transaction between Morris and the
plaintiff, the court specifically finds in favor of the plaintiff on
that issue, and there is no controversy as to the fact that the
mortgage was duly recorded soon after its execution.    The
court seems to have based its decision on the existence of a
usage at the Kansas City stock yards of placing money in a
Kansas City bank to the credit of a bank located near the
shipper's residence, for his use, and to have held that, having
so placed the funds, their duty was at an end, and that the
McCune bank might lawfully apply the money to the pay-
ment of any indebtedness due from Morris to it.

Counsel for the defendant in error cites many authorities
in support of the proposition that, the plaintiff having au-
thorized Morris to sell the hogs in question, the purchaser
from him obtained a good title.    There can be no doubt of
the correctness of this proposition.    It is not controverted.
The real question in this case is, whether the defendants, by
reason of a special usage at the Kansas City stock yards, have

a right to select a bank which is a creditor of the agent, and remit the proceeds of the property covered by plaintiff's mortgage to such creditor, and thereby discharge themselves from liability. It is conceded not only that Morris could sell and pass a good title to the mortgaged property, but that he also had the right to receive the proceeds as the agent of Lewis. This, however, gave Morris no right to divert the fund to the payment of his individual debt without the plaintiff's consent. May the defendants, then, and the McCune bank so divert it without the consent either of Morris or the plaintiff? The defendants in error contend that, having acted in accordance with a settled business custom, and having selected solvent banks, in accordance with such custom, they have done their whole duty. The theory on which special usages are held to be a part of contracts made with reference to business transacted at the place where such usages prevail is that the usages are presumed to be known to both parties to the transaction, and they are presumed to have contracted with

1. Local usage—when binding reference to them. We think the facts disclosed —when not. by the testimony in this case negative any such presumption. It appears that, in a former transaction between the defendants and Morris, they paid him the proceeds of stock sold by them by checks, at their office. Morris testified that at the time of the shipment he sent defendants a postal card informing them that the hogs were to be sold for account of T. D. Lewis, and directing them to remit by check to T. D. Lewis by W. H. Morris. The defendants deny having received this postal card. After the receipt of Morris's telegram inquiring what had become of the hogs, the defendants, on October 18, telegraphed him: "Proceeds placed in Farmers' Bank, McCune. See our letter." On the same day Morris answered by telegram, "Cannot accept deposit in bank here. Must have check to T. D. Lewis by W. H. Morris. Answer at once." The defendants also, on October 17, wrote Morris as follows:

"I never was more astonished than, after examining, to find that your proceeds had not been sent off on the 10th. A

party was in that day who told our clerk to hold the proceeds until he returned from a visit to Illinois, and I told him to mail you your proceeds in several checks, but as our clerk has been with us only a short time, and is not yet familiar with our customers, he got confused on the two, and, by mistake, held yours."

This letter clearly indicates that they intended to remit by check, and not in the manner in which this remittance was finally attempted, and, taken together with the former transaction between these parties, completely negatives the idea of any usage of such character that the parties to this case will be presumed to have dealt in reference to it. This letter from the defendants clearly shows that they did not contract with reference to such a usage, but that the defendants intended at the time the proceeds were first received to remit in an entirely different way. It is extremely doubtful whether the evidence offered at the trial establishes any such uniform custom as is claimed, irrespective of the special dealings between Morris and the defendants. It is clear, from all the evidence, that there are at least many exceptions in practice. For cases illustrative of the rule as to the essentials of a special usage, see *Wall v. Bailey*, 49 N. Y. 467; *Walsh v. Transportation Co.*, 52 Mo. 434; *Scudder v. Bradley*, 106 Mass. 422; *Wallace v. Morgan*, 23 Ind. 399; *Bailey v. Bensley*, 87 Ill. 556; *Smythe v. Parsons*, 37 Kas. 79. It is generally held that the custom must be uniform and reasonable. It is also generally held that a party who relies on a special usage must plead it. (*Lindley v. National Bank*, 41 N. W. Rep. 381; *Governor v. Withers*, 50 Am. Dec. 95; *Wallace v. Morgan*, supra.) This was not done in this case. We base our decision, however, on the fact that it affirmatively appears that the parties to this transaction did not deal with reference to any such alleged usage.

The proceedings in a suit brought by the McCune Bank *v.* W. H. Morris, before W. B. Crawford, a justice of the peace of Crawford county, were introduced in evidence. The summons in that case was issued on the 30th day of November, 1888. Testimony was also offered as to statements, claims

and declarations then made by Morris with reference to the credit of the proceeds of this shipment of hogs on his note held by the bank. The suit before Esquire Crawford was to recover the balance due on the note against Morris held by the bank. It clearly appears from all the evidence that the defendants were fully informed of the plaintiff's rights long before that suit was commenced, and we think the uncontradicted testimony shows that Morris's agency with reference to the collection of this claim had terminated. Mr. Moore, one of the defendants, himself testified to having received a letter from Hutchings & Keplinger, plaintiff's attorneys, dated November 2, informing them that this claim was then in their hands and requesting a settlement of it. While there is no doubt that actual payment by the defendants to Morris would have been good, it may well be doubted whether Morris had the right to accept an indebtedness due from himself in discharge of the money due his principal from the defendants, especially after they were fully informed of all the facts. (*Organ Co. v. Lasley,* 40 Kas. 521; *Deatherage v. Henderson,* 43 id. 684; *St. John v. Cornwell,* 52 id. 712.) The court found that the trial before the justice of the peace occurred December 22, and that at that time Morris had no other or further authority from plaintiff, Lewis, than that before mentioned; that the plaintiff was not present at said trial, did not know of it, and was not represented by counsel. While this is not a specific finding to the effect that Morris's agency had terminated, we think the uncontradicted evidence clearly shows that his agency had ceased more than a month before that trial, and that all of the testimony with reference to his statements and declarations at or about the time of the trial were erroneously admitted.

2. Agent—revocation of authority—notice—admissions of agent.

We are asked on behalf of the plaintiff in error to direct judgment in his favor for the amount claimed. The findings, however, of the trial court are not sufficient to warrant us in doing so. The judgment is reversed and a new trial ordered.

All the Justices concurring.