No. 20,878.

GEORGE RAINS et al., *Appellees,* v. HERMAN WEILER, *Appellant,* et al.

### SYLLABUS BY THE COURT.

1. CONTRACT—*Binding Force of Implied Contracts.* Parties may be as firmly bound by implied contracts as by those expressed in words, oral or written; they may arrive at agreements by acts and conduct which evince a mutual intention to contract and from which the law implies a contract.

2. PARTNERSHIP—*When Manager is Entitled to Compensation for Services.* The general rule is that in the absence of an agreement one partner is not entitled to compensation for his services while employed in the partnership business, but where one partner is intrusted with the management of the partnership business and at the instance of his copartner devotes his whole time and attention to it while the copartners are attending to their individual business, the case is taken out of the general rule and from the acts and conduct of the parties the law implies an agreement to pay the active managing partner compensation for his exceptional services.

3. SAME—*Payment of Manager—Proof of Custom.* Ordinarily where a party relies upon a custom or usage it should be specially pleaded, but in an action for a partnership accounting embracing many items, where the defendants answered with a general denial and did not challenge any item because of the absence of authority or an agreement to charge the firm with the item, the admission of evidence of a uniform, reasonable and well-settled custom with respect to the item was not error.

4. TRIAL—*Order of Proof.* The order in which proof is received is largely within the discretion of the trial court and is not a matter of much consequence where the case is tried by the court without a jury.

5. PARTNERSHIP—*Conduct of Business—Borrowing Money.* A manager of a partnership business acting in good faith may borrow money necessary for the conduct of the business instead of making an assessment upon the partners to obtain the necessary money.

Rains v. Weiler.

6. SAME—*Extending Partnership Business—Acts of Manager Approved.* Likewise, such partner in carrying on a mining enterprise may ex- tend the operations of the firm to land in proximity to that previously mined and the partnership will be bound by the operation if there is an absence of fraud or bad faith.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed July 7, 1917. Affirmed.

*Edward E. Sapp,* and *S. C. Westcott,* both of Galena, for the appellant.

*E. B. Morgan,* and *Don H. Elleman,* both of Galena, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by George Rains, Charles Moore, and Don H. Elleman as administrator of the estate of Charles Rains, deceased, against Herman Weiler, Charles Sheets and Fred Gerster to obtain a partnership ac- counting. Findings of fact and conclusions of law were made by a referee, upon whose report the court rendered judgment against the defendants in favor of plaintiff George Rains. Weiler appeals.

The partnership was known as Rains, Moore & Company, and for a little over a year and a half operated a mine called the Red Lion Mine, in Joplin, Mo. George and Charles Rains each had a three-twentieths interest in the partnership; Moore four-tenths; and the defendants each one-tenth. The Red Lion mill was destroyed by fire, and thereafter no mining operations were carried on by the firm. At the end of the partnership business there was a deficit, of which each of the plaintiffs paid his share in proportion to his interest, leaving a balance which was met by George Rains, and the recovery of which is sought from the defendants. There is a dispute as to the amount due from the defendants on the ground that some of the items for which Rains claims credit were not properly chargeable against the partnership. The manage- ment of the enterprise was left to George Rains, Moore kept the books of the company and Sheets worked as a laborer in the mine. The business was financed by Rains and Moore, who also borrowed money at the bank upon their own notes

when the partnership was in need of further funds. The other members contributed neither time nor money for the benefit of the partnership, but did accept profits arising from the conduct of the enterprise. During the continuance of the business dividends in the sum of $6500 were paid to the partners.

Among the items disputed by the defendants were the sum of $2125 paid out as salary to Rains as manager, $510 paid to Moore as bookkeeper and $1521 paid to Sheets in wages for ordinary labor. While there was testimony that Rains told Weiler that he would charge the firm $25 per week for his services as manager, the referee found that what was said did not amount to an express agreement, but that the evidence did show an implied agreement to pay him the reasonable value of his services. Testimony was introduced over the objection of the defendants to the effect that there was a custom among miners in that district that where some of the partners in a project of this character devote their time and effort to the conduct of the business while others take no part in it, the ones performing the services are to be paid therefor.

Another item complained of was the expenditure of $135.40 by Rains in prospecting the Ward mine, which was located near the Red Lion. After the Red Lion mill was burned and was not rebuilt the chance to work the Ward mine was offered to Rains. Thinking that he might thereby make a profit for the partnership, Rains undertook to operate this mine, but after testing it for a few days he abandoned the scheme, seeing that it would not pay. Out of this venture $46.54 was realized, making a net loss of $88.86.

The items mentioned were all held by the court to be properly chargeable to the partnership.

The principal controversy on this appeal arises over the allowance of compensation to the partners Rains, Moore and Sheets for their services rendered in the partnership business. Defendant contends that these partners were not entitled to compensation from other members of the firm because there was no special agreement to that effect. The general rule is that in the absence of an agreement a partner is not entitled to compensation for his services while employed in the partnership business. If there is no agreement to the contrary it is

the duty of each' partner to contribute his time, skill and ability so far as the same is reasonably necessary to the conduct of the business without other compensation than a share of the profits.  (*Insley v. Shire*, 54 Kan. 793, 39 Pac. 713; *Painter v. Hines*, 86 Kan. 832, 122 Pac. 1036.)  This rule was recognized by the referee and the trial court; but it was held that the acts and the conduct of the partners and the circumstances surrounding them implied an agreement that compensation was to be paid.  In his well-reasoned opinion the referee states that such a contract may be express or it may be implied from the conduct of the parties and the circumstances of the particular partnership, and he found that "the evidence conclusively shows that it was the understanding between all the partners that Mr. Rains was to be the manager of the business of the Red Lion Mining Company . . . that he was to be the responsible partner and there was no expectation that the other partners would devote their time to the business."  Apart from this consideration it was found from the evidence that there was a custom or usage in that mining district to pay for the services of the managing partner, and it follows that such usage entered into and became a part of the partnership agreement.  Defendant appears to contend that a partner is not entitled to compensation for services rendered unless there is an express agreement to that effect, and there are authorities that go to that extent.  (Note, 17 L. R. A., n. s., 385.)  Parties may be as firmly bound by implied contracts as by those expressed in formal language. In some cases parties arrive at agreements by words, either oral or written; and in other cases they arrive at an agreement by acts and conduct, showing a mutual intention to contract, and from which the law implies a contract.  (6 R. C. L. 587.)

In 1 Addison on Contracts, 8th ed., p. 54, it is said:

"The intention of the parties. to any particular transaction may, however, be gathered from their acts and deeds, in connection with the surrounding circumstances, as well as from their words; and the law therefore implies, from the silent language of men's conduct and actions, contracts and promises as forcible and binding as those that are made by express words or through the medium of written memorials."

A case closely in point with this one is *Emerson v. Durand, Ex'r, etc., and others*, 64 Wis. 111.  There two persons engaged

in the business of manufacturing linseed oil, but they made no express agreement relating to the management and control of the business. From the beginning Emerson had the control and management of the business in every detail. He superintended the construction of the mill and the purchasing of machinery and also superintended the making of additions and improvements. During the ten years that the business was conducted Emerson gave his entire time and attention to the business, while Durand occasionally visited the mill and made some suggestions as to the work, but was occupying a responsible position in another city, where he spent most of his time. The labor and care of operating the mill were performed by Emerson; he hired men and paid them, bought flaxseed, and looked after the sale of the products of the mill as well as the finances of the business. The rule that one partner can not ordinarily charge another partner for his services rendered in the partnership business unless there is an agreement to that effect was duly recognized, but the court stated that "it has its exceptions, founded in wisdom and experience. Where it can be fairly and justly implied from the course of dealing between the partners, or from circumstances of equivalent force, that one partner is to be compensated for his services, his claim will be sustained." (p. 118.) Applying that doctrine to the facts of the case the court remarked:

"When these facts, and others of a like tendency, are considered, they afford, to our minds, sufficient ground for implying a contract to compensate the plaintiff for his services in the management of the business. It is unreasonable to suppose the parties intended or understood that the plaintiff would give his entire time, attention, skill, and ability to the promotion of the common enterprise, while Mr. Durand, working for an insurance company on a large salary, should really contribute neither time nor attention nor labor, and that both should stand upon the same ground as to profits, and the plaintiff be paid nothing for his services. But, without dwelling longer upon the evidence bearing upon this point, we conclude by saying that a contract to pay for services rendered may be as fairly and incontrovertibly established by the acts and conduct of the parties, in connection with surrounding circumstances, as by words. Such a contract, we think, may reasonably be implied in this case." (p. 120.)

So here the plaintiff was an active partner who organized the business and advanced money to start it. He was made general manager and gave his entire time to the management

of the business. During the continuance of the business the plaintiff performed this unusual service, while the defendant was engaged in another line 'of business and gave no time to the partnership business. There was testimony of statements by defendant that he had left the management of the business to the plaintiff, and that whatever plaintiff did was satisfactory to him. A case where an active and managing partner devotes his whole time and attention to a partnership business at the instance of other partners, who are attending to their individual business and giving no time or attention to the business of the firm, presents unusual conditions which take the case out of the general rule as to compensation and warrants the implication of an agreement to pay compensation. (*Lewis v. Moffett*, 11 Ill. 392; *Levi v. Karrick*, 13 Iowa, 344; *Morris v. Griffin*, 83 Iowa, 327; *Hoag v. Alderman*, 184 Mass. 217; *Cramer v. Bachmann*, 68 Mo. 310; *Bradford v. Kimberly*, 3 Johns Ch. [N. Y.] 431; *Caldwell v. Leiber*, 7 Paige's Ch. [N. Y.] 483; *Mann v. Flanagan*, 9 Ore. 425; *Hooker v. Williamson*, 60 Tex. 524; *Sheridan v. Healy*, 15 Chi. Leg. News, 104; Note (subhead Implied Contracts), 17 L. R. A., n. s., 412.) The same is true as to Moore, who was employed by the manager to keep the books of the firm, and certainly there can be no doubt of the right of Sheets to payment for common labor performed by him in and about the mine under an agreement with the manager.

Complaint is made of the introduction of evidence that a custom or usage existed in the mining district to the effect that partners who devote their time to managing a mine, where other partners do not give the business any time or attention, are given compensation for their services. The objections to its admission were that it was not pleaded, and was not rebuttal, and further, that it was not shown that the defendant had knowledge of the same. In the matter of pleading, the plaintiffs asked for an accounting of the partnership, and the answer of the defendant was in effect a general denial in which no particular item of the account was challenged. If defendant had answered that there was no liability for services, because of the absence of an agreement, the plaintiffs could have set up the prevailing custom which entered into the partnership arrangement. As the pleadings stood

the plaintiffs were entitled to show the existence of a custom. The custom must, of course, be general and uniform, and can not be received in evidence if it is contrary to law or to reason. (*Smythe v. Parsons,* 37 Kan. 79, 14 Pac. 444; *Clark v. Alla-mann,* 71 Kan. 206, 80 Pac. 571.) Nor is it admissible where it appears that the parties did not contract with reference to the custom. (*Lewis v. Metcalf,* 53 Kan. 219, 36 Pac. 346.) Here the custom or usage appears to have been general, uniform and well known in the district in which all the parties resided. As said in *Smythe v. Parsons,* supra, "parties are always presumed to contract with reference to a uniform and well-settled custom or usage pertaining to the matters concerning which they make the contract, where such custom or usage is not in opposition to well-settled principles of law, nor unreasonable." (p. 82.) The custom being general and well settled, the defendant is presumed to have known of it and to have contracted with reference to it. It is not opposed to law, and it can not be said to be unreasonable. It appears to accord with other testimony in the case; that is, the facts and circumstances were such as to show a mutual intention to pay for the exceptional services of the plaintiffs. The result must have been the same without proof of the custom, as an agreement to pay for the services would be implied by law from the acts and conduct of the parties. The usage appears to accord with the common understanding.

Nor is there anything substantial in the objection that it was not proper rebuttal evidence. The order in which proof is received is largely within the discretion of the trial court and it is not regarded as a matter of much consequence, especially where, as here, the case was tried without a jury. (*McBride v. Steinweden,* 72 Kan. 508, 83 Pac. 822; *Bank v. Brecheisen,* 98 Kan. 193, 157 Pac. 259.)

Complaint is made of the action of the manager in borrowing money instead of making assessments on the partners, and this question was raised by an objection to the evidence. Where the managing partner acts in good faith he has the right to borrow money reasonably necessary to carry on the business of the firm instead of resorting to an assessment on the partners. Nothing appears to show bad faith in the action that was taken.

Objection is also made to the allowance of the item of $88.86, the loss resulting from the operation of the Ward property for a few days. This was likewise within the scope of the powers intrusted to the manager. After the Red Lion mill was burned and the proprietor would not rebuild it, attention was turned to the Ward property, on which there was a mill, but a test of a few days demonstrated that it could not be profitably operated and the business was suspended. The good faith of the transaction can hardly be questioned.

There was evidence to sustain the special findings of the referee and no material error is found in the record. Judgment affirmed.