NOT DESIGNATED FOR PUBLICATION

No. 124,428

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WESLEY PROPERTIES MANAGEMENT, INC.,
*Appellee*,

v.

GEOFFREY HILL (deceased),
JENNIE ANDRUK and ZACHARY ANDRUK,
*Appellants*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; JOHN J. BRYANT, judge. Opinion filed July 15, 2022. Affirmed.

*Daniel E. Cummings* and *Matthew D. Keenan*, of Shook, Hardy & Bacon LLP, of Kansas City, Missouri, for appellants.

*Gary A. Nelson*, of Gary A. Nelson, P.A., of Leavenworth, for appellee.

Before ATCHESON, P.J., WARNER, J., and ANTHONY J. POWELL, Court of Appeals Judge, Retired.

PER CURIAM: Defendants Jennie and Zachary Andruk, a married couple, appeal the ruling of the Leavenworth County District Court evicting them from an apartment managed by Plaintiff Wesley Properties Management, Inc. While the Andruks have advanced several creative arguments in this appeal, we find them unavailing in light of both the district court's factual findings and the clear language of the Kansas Residential Landlord and Tenant Act (KRLTA). In turn, we affirm the district court's eviction order.

1

Wesley Properties Management filed this Chapter 61 action in late July 2021 to remove the Andruks from the apartment where they apparently had been living for months. See K.S.A. 61-3801 et seq. About a month later, the district court held a bench trial on the eviction claim and promptly entered written orders. From the district court record, including the trial, we glean these facts:

Geoffrey Hill, Jennie Andruk's stepfather, signed a one-year lease for the apartment on December 19, 2019, and duly moved in. A representative of Wesley Properties signed the lease as the lessor for an undisclosed property owner—a circumstance that, as we explain shortly, has independent legal significance under the KRLTA, K.S.A. 58-2540 et seq. Hill was in poor health, and the apartment was partially subsidized through a government program. Jennie Andruk helped Hill with various activities and managed at least some of his financial affairs.

Hill remained in the apartment beyond the term of the lease, converting his occupancy to a month-to-month tenancy. At some point, the Andruks moved into and began living in the apartment with Hill. Hill died in June 2021, and the Andruks continued living in the apartment without paying rent for July. They never signed a lease, a sublease, or otherwise delivered written notice of their occupancy to anyone with Wesley Properties Management. Based on the record, Zachary Andruk played no relevant part in this legal drama, so going forward our reference to "Andruk" alone means Jennie.

Andruk displayed a handwritten note dated June 30, 2021, on the door of the apartment stating she was in the process of "willingly" moving out of the place after having "been here for over a year . . . ." Wesley Properties Management posted a three-day notice on the apartment door on July 13 addressed to Hill and anyone else residing there that the company would "pursue legal action against you . . . for possession of the

premises" if the rent due were not immediately paid. The notice identified the amount due as the monthly rent Hill had personally paid apart from the government subsidy. Andruk tendered that amount, but Wesley Properties Management refused to accept the payment because she was not a tenant.

During the bench trial, Mary Garrison, the Wesley Properties Management office manager, testified that Andruk came to the office from time to time to drop off a rent check or to make a request for maintenance. Garrison testified that she believed Andruk was simply acting for her stepfather and did not live in the apartment. According to Garrison, Andruk requested a lease application at some point but never returned it to the office. The district court credited that testimony. Garrison also testified that she understood Andruk's June 30 note to mean she was removing her stepfather's personal effects from the apartment and not that she had been living there and was moving out. The district court also credited that testimony, although it reflects a decidedly strained reading of the note.

Andruk testified that on occasion she told "ladies in the office" that she and her husband were living in Hill's apartment. The district court expressly rejected that testimony, finding it to be an inaccurate statement of historical fact. So the district court determined Andruk never said anything like that to someone in the office. But the district court concluded Andruk testified falsely on that point because she understood she actually had no landlord-tenant relationship with Wesley Properties Management. The district court buttressed its conclusion based on Andruk's request for a lease agreement— a request that would have been unnecessary if she already were a tenant. In short, the district court found that the Andruks were not tenants and resided in the apartment without any legal right or authority. They were, in a word, squatters.

The district court entered an order evicting the Andruks from the apartment and granting possession of the premises to Wesley Properties Management. The district court

denied the Andruks' request to remain in the apartment and to pay rent into court during an appeal. See K.S.A. 2021 Supp. 61-3905(c) (permitting district court to allow rental payments in place of supersedeas bond during appeal). The Andruks have appealed. Although Hill appears as a defendant in the case caption, his estate has never been substituted as a party, and no one has ever appeared for Hill or his estate. Neither the relief the district court ordered nor the issues on appeal affect Hill's estate.

LEGAL ANALYSIS

*Wesley Property Management's Standing and Subject Matter Jurisdiction*

On appeal, the Andruks argue Wesley Properties Management lacked standing to bring the Chapter 61 eviction action because it does not own the apartment building. Under Kansas law, standing is an essential component of subject matter jurisdiction. *KNEA v. State*, 305 Kan. 739, 743, 387 P.3d 795 (2017). So if a plaintiff lacks standing, then the district court has no subject matter jurisdiction over the action. In turn, any order entered by a district court without subject matter jurisdiction is void and, thus, unenforceable. *In re Estate of Heiman,* 44 Kan. App. 2d 764, 766, 241 P.3d 161 (2010).

To have standing, a party typically must have an actual stake in what's being litigated and some recognized legal interest that would be benefitted or burdened by a final judgment. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015). Otherwise, the party would be litigating abstract or hypothetical legal issues resulting in an advisory opinion or would be impermissibly litigating someone else's legal rights. *Peterson v. Ferrell*, 302 Kan. 99, 103, 349 P.3d 1269 (2015); *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008). Standing presents a question of law we review without deference to the district court's conclusion. *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 676. If, however, the

4

conclusion rests on the district court's resolution of conflicting factual representations, we defer to those determinations when they are supported by substantial evidence.

Here, the record shows that Wesley Properties, LLC, a corporate entity separate from Wesley Properties Management, owns the apartment. Jerry Wesley is the principal or sole shareholder of each corporation, although that is of no particular legal significance in determining Wesley Property Management's standing to bring a Chapter 61 eviction action. The trial evidence established the two corporations entered a contract for the management of the apartment building. But neither the agreement itself nor its pertinent terms were presented, so they can shed no light on standing. We are not, however, navigating in the dark.

The KRLTA confers standing on Wesley Properties Management. A landlord is statutorily defined as: "the owner, lessor[,] or sublessor of the dwelling unit . . . and it also means a manager of the premises who fails to disclose as required by K.S.A. 58-2551." K.S.A. 58-2543(e). Under K.S.A. 58-2551, a residential lease must disclose the manager of the premises and the owner or someone authorized to receive notices on behalf of the owner. If the lease fails to do so, the party signing the lease on behalf of the owner becomes a landlord under the KRLTA by virtue of K.S.A. 58-2543(e). Here, Wesley Properties Management was the lessor of the apartment, as evidenced by the lease with Hill. The company operated in that capacity with respect to the Andruks and third parties, even though they were not signatories to the lease. In addition, the owner of the apartment (Wesley Properties, LLC) was not disclosed in the lease, alternatively making Wesley Properties Management the landlord through the default provision in K.S.A. 58-2543(e). Under K.S.A. 58-2552, "[t]he landlord may bring an action for possession against any person wrongfully in possession" of the property.

Those provisions together confer standing on Wesley Properties Management to file a Chapter 61 eviction action as a statutorily defined landlord. Standing extends to

5

ousting "any person" from the premises, a generic term encompassing both statutory tenants and interlopers or squatters. Accordingly, Wesley Properties Management had the authority and a legal right—standing—under the KRLTA to proceed. Basically, the Legislature sought to accommodate the legal interests of owners of residential rental properties who wish to delegate full operation and management of those premises to an agent. We see nothing amiss in that legislative purpose or the resulting grant of authority in the KRLTA.

The Andruks offer two rejoinders we find unpersuasive. First, they say the authority to bring an eviction action against someone other than a tenant, as outlined in K.S.A. 58-2552, applies only when the landlord has already leased the premises to another person. In other words, according to the Andruks, a landlord could not evict a squatter from a residential rental unit if the premises would otherwise be vacant. Simply stating the proposition illustrates its illogic. More particularly, the Andruks' peculiar statutory construction reads a condition or provision into the statute that cannot be found in the actual words. We do not tinker with legislative handiwork in that way. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, Syl. ¶ 6, 241 P.3d 15 (2010) (The court "will not speculate on legislative intent and will not read the [statutory] provision to add something not readily found in it."); *Unruh v. Purina Mills*, 289 Kan. 1185, 1201, 221 P.3d 1130 (2009) (rejecting an argument that "asks the court to read into the statute language that is not present").

Second, the Andruks suggest that even if Wesley Properties Management had statutory standing under the KRLTA, the company somehow lacked constitutional standing. But they never really explain, in this situation, why the two forms of standing would differ or why statutory standing would not otherwise satisfy constitutional standing. Here, there was a genuine legal dispute over the Andruks' occupancy of the apartment in the sense they were not prepared to leave of their own accord. And Wesley Properties Management was not asserting the legal rights of some stranger in bringing the

6

eviction action to oust them. Those circumstances are sufficient to confer both statutory and constitutional standing.

We mention in passing that even if Wesley Properties Management were not the proper party to bring this case, that likely would be a real party in interest problem, given the close affiliation of Wesley Properties Management with Wesley Properties, LLC, rather than a standing issue. See K.S.A. 2021 Supp. 60-217(a)(1). Unlike a lack of subject-matter jurisdiction, prosecuting a civil action in the name of a person or entity who is not the real party in interest is a correctable defect. See K.S.A. 2021 Supp. 60-217(a)(1); *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 550, 419 P.3d 608 (2018). Because the parties have been content to present the inquiry as one of subject-matter jurisdiction, we similarly confine our determination to the legal frame they have provided us.

*Andruks' Assertion of Tenant Rights*

The remaining points the Andruks raise on appeal turn on Wesley Properties Management's compliance with provisions of the KRLTA related to eviction actions. But the arguments also require the Andruks to have been tenants. The district court properly found they were not.

The Andruks say they had an implied-in-fact contract with Wesley Properties Management for occupancy of the apartment. We are unpersuaded, especially given the district court's factual findings. The law will imply a contract for parties who have undertaken a transaction—typically the exchange of money for goods or a service—without formalizing the terms of the deal either orally or in writing. See *Atchison County Farmers Union Co-op Ass'n v. Turnbull*, 241 Kan. 357, 363, 736 P.2d 917 (1987) ("Contracts implied in fact are inferred from the facts and circumstances of the case and are not formally and explicitly stated in words."); *Degnan v. Young Bros. Cattle Co.*, 152

7

Kan. 250, 255, 103 P.2d 918 (1940) (Parties "'may arrive at agreements, by acts and conduct which evince a mutual intention to contract and from which the law implies a contract.'") (quoting *Rains v. Weiler*, 101 Kan. 294, Syl. ¶ 1, 166 P. 235 [1917]). So, "[i]mplied-in-fact contracts, then, function as a convention to impose some legal structure upon arrangements parties have left unstructured either because they have failed to appreciate the utility that structure might provide if their relationship does not go as planned or because they consider their arrangements so straightforward they have no need to fully articulate the terms." *Lindsey Masonry Co. v. Murray & Sons Construction Co.*, 53 Kan. App. 2d 505, 533, 390 P.3d 56 (2017) (Atcheson, J., concurring).

An implied contract arises when the parties have mutually acted in a way evincing an agreed-upon bargain. The facts here, as found by the district court and supported by substantial evidence, are otherwise. Andruk simply delivered rent checks and maintenance requests to Wesley Properties Management—conduct fully consistent with the ongoing landlord-tenant relationship between the company and Hill. Nothing about those interactions implied some understanding or agreement that Andruk could reside in the apartment as a co-tenant or sublessee. The credited evidence shows no meeting of the minds or overt manifestation of assent to such a proposal—a necessary condition for a contract whether formal or implied. See *Hercules Inc. v. United States*, 516 U.S. 417, 424, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996) ("An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'") (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597, 43 S. Ct. 425, 67 L. Ed. 816 [1923]); 17 C.J.S., Contracts § 15. The June 30 note Andruk wrote doesn't create an implied-in-fact contract even if we were to construe it as reasonably informing Wesley Properties Management that she had been residing in the apartment. The company, however, took no rent from Andruk after reviewing the note—conduct that arguably might have signified a form of acceptance of

8

Andruk's occupancy of the apartment as a tenant. To the contrary, the company promptly began eviction proceedings and refused her tender of rent.

The Andruks' arguments otherwise fail. They contend the written notice Wesley Properties Management delivered on July 13 was deficient because it did not explicitly state it was the company's "intention to terminate the rental agreement if the rent is not paid" within three days, thereby parroting the exact statutory language in K.S.A. 58-2564(b) describing the required notice. The notice stated Wesley Properties Management would "pursue legal action against you . . . for possession of the premises" if the rent remained unpaid for three days. The statutory notice must be given to *tenants*, and the Andruks weren't tenants, as we have already explained. Moreover, the language Wesley Properties Management used imparted fair notice of what steps would be taken, conforming to the purpose of K.S.A. 58-2564.

Along the same lines, the Andruks contend Wesley Properties Management wrongfully refused Andruk's offer of the delinquent rent after receiving the July 13 notice. But the statutory right to cure the delinquency within the three-day period belongs to tenants. K.S.A. 58-2564(b) (landlord may terminate agreement if "the tenant fails to pay rent" after receiving three-day notice). Because the Andruks were not tenants, they could not tender the unpaid rent and continue residing in the apartment. Their interpretation of K.S.A. 58-2564 would allow a squatter to *create* a landlord-tenant relationship by curing an ostensible breach of a landlord-tenant relationship that never existed. The argument fails.

*Postjudgment Relief During Appeal*

After the district court entered its eviction order, the Andruks requested they be allowed to pay rent into court and remain in the apartment during any appeal. The district court denied their request. The Andruks have appealed that ruling.

Under K.S.A. 2021 Supp. 61-3905(c), a district court may allow a losing defendant in an eviction action to pay "into court . . . the periodic rent otherwise due from the defendant to the plaintiff under the rental agreement pertaining to the real property at issue" as an alternative to posting a supersedeas bond. If the defendant posts a bond or complies with a pay-in order, the proceedings are stayed on appeal. K.S.A. 2021 Supp. 61-3905. Execution of the eviction order is then held in abeyance, so the defendant retains possession of the premises.

The Andruks did not ask the district court to set a supersedeas bond. They sought postjudgment relief only through a pay-in order, as provided in K.S.A. 2021 Supp. 61-3905(c). The statutory language plainly requires the parties have a landlord-tenant relationship, since the amount to be paid periodically conforms to the rent that would have been due under their "rental agreement." Here, the district court found the Andruks had no such relationship and no such agreement with Wesley Properties Management. Based on that finding, they were not legally entitled to a pay-in order.

Given the permissive language governing pay-in orders—the district court "may" grant the request—we presumably review a ruling one way or the other for abuse of judicial discretion. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Here, the district court relied on credibility determinations and resulting historical facts supported in the evidence to find no landlord-tenant relationship. And given the statutory language of K.S.A. 2021 Supp. 61-3905(c), the district court acted within the legal framework. Had the district court granted the Andruks' request for a pay-in order, it likely would have abused its discretion by disregarding those legal

10

dictates. We have no doubt other district courts would have denied a pay-in order in comparable circumstances.

The Andruks had no right to a pay-in order as squatters. Even if they did, the district court did not exceed its broad judicial discretion in the denying their request.

Having considered the parties' arguments and the appellate record, we find no error in the district court's rulings in entering the eviction order and denying the postjudgment request to stay that order during this appeal.

Affirmed.