### No. 40,967

FRED HEWITT and I. E. HEWITT, as Executors of the Estate of Pearl Buckbee Biege, Deceased, *Appellants,* v. RAY R. BIEGE, SR., *Appellee* and *Cross-Appellant.*

(327 P. 2d 872)

Opinion filed July 7, 1958.

*Evart Garvin,* of St. John, argued the cause, and *Robert Garvin* and *Morris Garvin,* both of St. John, and *Roy C. Davis, Frank S. Hodge, Eugene A. White, Robert Y. Jones* and *H. Newlin Reynolds,* all of Hutchinson, were with him on the briefs for the appellants.

*W. Y. Chalfant,* of Hutchinson, argued the cause, and *H. R. Branine, C. E. Chalfant* and *F. C. Littooy,* all of Hutchinson, were with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by the executors of the estate of Pearl Buckbee Biege against Ray R. Biege, Sr., the surviving spouse, for the purpose of bringing assets into the estate.

The petition contained four causes of action. The first three, concerning conversion of checks amounting to $4,095.66, are identical, and we treat them as one. The plaintiffs-executors charged the defendant, Ray Biege, with endorsing the name of decedent after her death upon these checks, which were payable to her order, and causing them to be cashed and deposited in his account the day following her death. In the fourth cause of action the executors sought an accounting for payments received by defendant on an escrow contract for the sale of real property which had been held by decedent and defendant as joint tenants. The trial court rendered judgment for the plaintiffs on the first three causes of action and for the defendant on the fourth cause of action. Plaintiffs appeal from the judgment rendered against them on the fourth cause of action and defendant cross-appeals from the judgment rendered against him on the first three causes of action.

The facts relating to the determinative issue involved in plaintiffs' appeal from the judgment rendered on the fourth cause of action are as follows:

On and prior to July 21, 1952, defendant, Ray Biege, and his wife, Pearl, were the owners as joint tenants with the right of survivorship and not as tenants in common of certain real estate in Reno county, and administered the property as such. On the mentioned date they sold the property to Silas and Odessa Cooper on a real estate contract, placing the contract, together with a warranty deed to the property, in escrow in a Hutchinson bank. The consideration for the contract was $7500. Fifty dollars was paid in cash and the

balance was payable at the rate of thirty dollars a month. The contract provided that all future payments were to be made to the bank, which was instructed to deposit such payments to the joint survivorship bank account of Ray and Pearl. The contract contained *inter alia* provision that the payments were to be made promptly, that the Coopers should have immediate possession, that if they failed to make the payments due or to pay the taxes or to keep the property insured or committed waste or did not perform any of the terms and conditions or covenants, the contract would be forfeited and the payments already made would be retained as liquidated damages and rent and the sellers would be allowed to re-enter and take complete possession of the premises. The contract itself contained no provision that the right to receive payments was held in joint tenancy. Payments were made to the bank by the Coopers under the terms of the contract and, as instructed, the bank deposited these payments to the joint bank account of Ray and Pearl. At the time of Pearl's death, July 13, 1954, there still remained unpaid on the contract $7013.57, and thereafter the bank continued to collect the payments under the contract and to deposit them in defendant's account, the former joint survivorship account. Plaintiffs-executors seek to recover an undivided one-half interest in the proceeds collected on the contract and deposited to defendant's account since the death of Pearl.

The question presented by plaintiffs' appeal is whether a husband who joined with his wife as a vendor in a real estate contract for the sale of real property held by them as joint tenants with the right of survivorship is entitled to the unpaid portion of the purchase price under the contract of sale by right of survivorship upon the death of the wife, or does such contract constitute a severance of the joint tenancy.

One of plaintiffs' contentions is that, the contract of sale not specifying otherwise, a tenancy in common was created. (G. S. 1957 Supp., 58-501.) Therefore, defendant was entitled to only an undivided one-half interest in all the payments made after Pearl's death, rather than the full proceeds to which he would have been entitled as survivor of a joint tenancy. Another contention necessary to support the first is that the sale of the property and the deposit of the deed in escrow, along with possession, completely and wholly severed any relationship of joint tenancy in any subject mat-

ter and created a new tenancy presumed under G. S. 1957 Supp., 58-501 to be a tenancy in common.

Plaintiffs contend that the unities in interest, title, time and possession were severed when the Bieges changed their right from ownership and possession of realty as joint tenants to the legal right to receive payments or personalty. It is here noted that under the express provisions of G. S. 1957 Supp., 58-501 a joint tenancy may be created in personal as well as real property. (*Bouska v. Bouska,* 159 Kan. 276, 280, 153 P. 2d 923; *Spark v. Brown,* 167 Kan. 159, 164, 205 P. 2d 938; *In re Estate of Fast,* 169 Kan. 238, 242, 218 P. 2d 184.)

Assuming the unities rule were applied, there was certainly unity of title as legal title remained in the joint tenants, Ray and Pearl; the unity of interest continued in the holders of the legal title and in their security interest; unity of possession was unchanged as such unity does not require actual possession, as we can have joint tenancies in a reversion or remainder and even in a possibility of a reverter. In the event of breach of the contract, both parties as joint tenants could have brought an action for cancellation of the contract and redelivery of the deed and could have taken actual possession of the property. The unity of time was unchanged inasmuch as Ray and Pearl acquired the property in joint tenancy and executed the contract at the same time. (38 Minn. L. Rev. 466, 477, 478.) We do not agree that a mere change in the form of property is conclusive proof of an intent to sever a joint tenancy or that such a change destroys unities between joint tenants. In the instant case no unities were destroyed but, rather, the character of the property was changed. That event may well be coincidental and without significance, since in this state the joint tenancy may be had in personal as well as in real property. Under the statute (58-501) the intent of the parties and not the fact of a change in the form of the property controls.

Plaintiffs seem to argue that since the conveyance of one joint tenant to an outsider severs the joint tenancy, the conveyance of all must be just so much stronger in showing intent to repudiate the tenancy. It appears to us much more logical to say that when all joint tenants concur in an act and none dissent there has been no hostile or adverse act which would terminate the tenancy. Changing the form of the property is an act unrelated to the holders' status as joint tenants. Joint tenancy is a relationship between

certain people who have as a result of that tenancy certain rights in the *res.* If under our statute joint tenancy may be had in both personalty and realty, there is no reason to alter the personal relation of joint tenancy because of an act done jointly to the property. It was held by the High Court of Justice in Ireland in an opinion written by O'Connor, L. J., in *Hayes' Estate* [1920] 1 I. R. 207:

"An agreement for sale entered into by the persons who were together joint tenants of real property does not in itself, and in the absence of evidence of intention, operate as a severance of a joint tenancy in the purchase-money."

It was further held that a mere agreement by persons entitled as joint tenants to convert their property from one species to another does not operate to work a severance.

It was stated in *Fish v. Security-First Nat. Bank,* 31 Cal. 2d 378, 189 P. 2d 10, 15, that, "The proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired." (Citing cases.)

Other cases suggesting or holding that a change in the property does not affect the relation of joint tenancy unless intent to do so is manifested are *Watson v. Watson,* 5 Ill. 2d 526, 126 N. E. 2d 220, 223, 224 (where equities existed); *In re Estate of Jogminas,* 246 Ill. App. 518; *In re De Witt's Will,* 202 Misc. 167, 114 N. Y. S. 2d 81; *Simon v. Chartier,* 250 Wis. 642, 27 N. W. 2d 752, 754; *In re Estate of Baker,* 247 Iowa 1380, 78 N. W. 2d 863 (see dissenting opinion, p. 869); 41 Cornell Law Quarterly 154; 38 Minn. L. Rev., *supra.* Tenancies by the entirety result in proceeds of property, which was so held. (*Sheldon v. Waters,* 5 Cir., 168 F. 2d 483, 485; *Detroit & Security Trust Co. v. Kramer,* 247 Mich. 468, 226 N. W. 234; *Bramberry's Estate,* 156 Pa. 628, 27 Atl. 405.)

It would appear that in view of our statute a joint tenancy is severed only in the manner in which it was created, *i. e.,* by the clear intent of the parties. Plaintiffs rely on the case of *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283, to sustain their position. This case, however, is easily distinguishable and, in fact, poses a different question entirely. There, a husband and wife, joint tenants in certain real estate, executed a joint and mutual will which by its terms was declared to be contractual. Under the provisions of the will the survivor was to take a life estate in all the property of the deceased, and on the death of the survivor all the property was to be divided by the two sets of children named in the will. After

the husband's death the will was admitted to probate, and upon final settlement of his estate the surviving widow claimed full title to the joint tenancy property. In holding that the terms of the contractual joint and mutual will effected a severance of the joint tenancy provision in the deed to the land, the court found the will to be an agreement, testamentary in form, that the survivor should take a life estate in the property, however owned by the parties, with remainder over. Such an act was clearly inconsistent with the existence of a joint tenancy and indicated an intention and agreement that such a relationship should not exist. A joint tenancy, of course, may be severed by the express agreement of the parties to terminate it.

We agree with the trial court's well-reasoned holding that notwithstanding the Bieges entered into an executory contract to sell and convey the land, they were the owners of the legal title to the real estate, subject to the escrow contract for the sale thereof, as joint tenants and not as tenants in common, and at the death of Pearl the defendant as surviving joint tenant became the sole owner of the legal title to the real estate and all rights under the escrow contract for the sale thereof.

Defendant contends on his cross-appeal that the trial court erred in rendering judgment against him on the first three causes of action on the ground that the actions were barred by the two-year statute of limitations, G. S. 1949, 60-306 (*Third*).

The facts necessary to determine this issue follow: At the time of her death, July 13, 1954, Pearl Biege had in her possession and payable to her order certain checks totaling $4095.66. The day following Pearl's death defendant endorsed her name to these checks and deposited them to his account in a Hutchinson bank. Plaintiffs were appointed and qualified as executors of Pearl's estate on October 7, 1954, and on September 12, 1956, they commenced this action to recover from defendant the amount of the checks converted by him.

It is the gist of defendant's contention that the statute of limitations commenced to run on the day he converted the checks, July 14, 1954, and that since this action was not instituted until September 12, 1956, it was barred. Plaintiffs contend that the statute was tolled between the death of Pearl and their appointment as executors, as until that time there was no one in being capable of bringing suit, and that the limitations began to run from

the day of their appointment, October 7, 1954, and the action was within time.

It must be conceded that the cause of action accrued the day after the death of decedent, *i. e.*, at the time defendant cashed and deposited the checks to his account. The general rule of law applicable to the facts in this case is stated in 54 C. J. S., Limitations of Actions, § 243, pp. 271 and 272:

"Although there is some authority to the contrary, the general rule is that, where a right of action accrues after the death of the person entitled to sue, limitations will not begin to run until administration is taken out on his estate or until probate of the will and the qualification of an executor, for the reason that until then there is no one in existence who is authorized to sue; . . ."

In the early decisions of our court we chose to follow the majority rule. In *Carney v. Havens*, 23 Kan. 82, we stated:

"If, pending such a contract, the party employed to render the services dies, the statute of limitations does not begin to run, on the claim for compensation, until, by the appointment of an administrator or executor, there is some one authorized to collect and receive the compensation."

Again in *Mills v. Mills*, 43 Kan. 699, 23 Pac. 944, we stated that where a cause of action does not accrue until after the death of one of the parties, the limitations will not begin to run on the claim of the estate of the deceased person until an administrator or executor authorized to collect or enforce payment of the claim has been appointed. See also 74 A. L. R. Anno., 837.

It appears to be well settled that the statute of limitations does not begin to run until there are in being a person capable of suing and a different person capable of being sued, as well as a court of competent jurisdiction in which the matter may be heard. (*Peyton v. Chase County Nat'l Bank*, 124 Kan. 763, 766, 262 Pac. 595; 54 C. J. S., Limitations of Actions, § 111, p. 16; 21 Am. Jur., Executors and Administrators, § 902, p. 878.)

Under the facts in the instant case the appointment of the executors was timely (G. S. 1949, 59-617) and the action was commenced by them within the two years allowed by the applicable statute of limitations. It follows that the judgment of the trial court is affirmed as to both the appeal and cross-appeal.

It is so ordered.