(830 P.2d 1216)

No. 66,612

IN THE MATTER OF THE ESTATE OF AILEEN BUTTON, DECEASED.

Opinion filed April 24, 1992.

*John Black,* of Black & Black, of Salina, for appellant.

*Dana P. Ryan,* of Clark, Mize & Linville, Chartered, of Salina, for appellee.

Before LARSON, P.J., GERNON, J., and RICHARD B. WALKER, District Judge, assigned.

LARSON, J.: David Button appeals from the trial court's determination that monies transferred to him by his now-deceased parents were loans owned by his parents as joint tenants with

the right of survivorship which are to be set off against his distributive share of the estate of his mother, Aileen Button.

David, Damon, and Darcy Button are the only children of Robert and Aileen Button.

Over a period of several years, Robert transferred money from his and Aileen's joint tenancy with right of survivorship bank accounts to all three sons. Damon and Darcy understood the monies received were loans, which they repaid with interest.

David did not characterize the monies received as loans or gifts, nor did he make any repayment to his parents with the exception of one cash payment of $1,600.

Robert died intestate in December 1988. After Robert died, Damon and Darcy discovered that David had not repaid their parents for the monies transferred to him. An attempt was made to work out an agreement with David to repay the monies to Aileen.

Aileen had multiple sclerosis. From 1978 until her death she did not handle personal or financial matters. Aileen did execute a will that left all of her property to her three sons in equal shares.

After Aileen died in October 1989, Darcy was appointed executor of her estate.

The final settlement petition requested the loan obligations of David plus accrued interest be set off against his distributive share of Aileen's estate. David objected to the final settlement petition, denying he was obligated to Aileen or her estate.

All three sons testified at the hearing. Documentary evidence showing the transfers as loans and Robert's accountings was introduced.

Testimony showed all advanced monies came from accounts held as joint tenancy with rights of survivorship and the one payment made by David was returned to such an account. The evidence showed Robert and Aileen were devout Mormons who felt all of their property was owned jointly.

The trial court found the monies transferred to David from his deceased parents were loans held as property in joint tenancy with rights of survivorship to be set off against his distributive share of Aileen's estate.

David appealed.

*Did the trial court err in finding the monies transferred to David were loans rather than gifts?*

The determination of whether the monies transferred to David were gifts is a question of fact. See *Hudson, Administrator v. Tucker,* 188 Kan. 202, 211, 361 P.2d 878 (1961). "The standard of appellate review of findings of fact has been stated numerous times by this court. The court must determine if the findings are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law." *Army Nat'l Bank v. Equity Developers, Inc.,* 245 Kan. 3, 19, 774 P.2d 919 (1989).

"To establish a valid gift *inter vivos,* there must be (*a*) an intention to make a gift; (*b*) a delivery by the donor to the donee; and (*c*) an acceptance by the donee." *In re Estate of Matthews,* 208 Kan. 492, Syl. ¶ 6, 493 P.2d 555 (1972). "The burden of proving that a gift was made, including the existence of all the elements necessary to its validity, is upon the party asserting the gift." *Truax v. Southwestern College,* 214 Kan. 873, Syl. ¶ 3, 522 P.2d 412 (1974).

According to *Coe, Administratrix v. First National Bank & Trust Co.,* 219 Kan. 352, Syl. ¶ 1, 548 P.2d 486 (1976), "[a] loan is made when the borrower receives money over which he exercises dominion and which he expressly or impliedly promises to repay."

"If the judicial mind is left in doubt or uncertainty as to exactly what the status of the transaction was, the donee must be deemed to have failed in the discharge of his burden and the claim of gift must be rejected." 38 Am. Jur. 2d, Gifts § 106.

David did not characterize the monies as either loans or gifts, but merely as transfers from his mother and father.

Darcy introduced their deceased father's records, which specifically accounted for four of the transfers as loans. Three of the transfers have provisions that set forth a rate of interest. Interest was calculated and added to the loan principal in Robert's computations.

Robert's records showed other transfers of money to David for house payments and expenses of David's business from the joint tenancy account. Robert kept monthly accountings of transfers to

David in the same manner as he kept accountings for loans to Damon and Darcy. Although only four of the largest transfers were characterized as loans, Robert's records support Darcy and Damon's contention that all transfers to David were intended as loans.

David clearly failed to meet his burden to prove the monies transferred to him were gifts. The trial court's findings that the monies transferred were loans is supported by substantial competent evidence. The lack of written promissory notes does not negate the existence of a loan transaction. In *Rains v. Weiler,* 101 Kan. 294, 297, 166 Pac. 235 (1917), it was stated:

" 'The intention of the parties to any particular transaction may, however, be gathered from their acts and deeds, in connection with the surrounding circumstances, as well as from their words; and the law therefore implies, from the silent language of men's conduct and actions, contracts and promises as forcible and binding as those that are made by express words or through the medium of written memorials.' "

Neither can the monies transferred be considered as advancements, as David argues.

" 'In its strict technical sense, an advancement is a perfect and irrevocable gift, not required by law, made by a parent, during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part of the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor, intestate.' " *In re Estate of Bush,* 155 Kan. 556, 560, 127 P.2d 455 (1942).

Strictly speaking, the term advancement applies in situations when the decedent died intestate, but the term has been used in will cases interchangeably with ademption. *In re Estate of Wernet,* 226 Kan. 97, 107, 596 P.2d 137 (1979); *Bush,* 155 Kan. at 560. See K.S.A. 59-510.

Before the transfers to David could be considered advancements, they first would have to have been shown to be gifts. David, having failed in his burden to prove the transfers were gifts, is precluded from arguing that the transfers were entitled to be treated as advancements.

The trial court correctly ruled the monies transferred to David from his parents were loans.

*Did the trial court err in finding the loans were owned by Robert and Aileen as joint tenants with the right of survivorship?*

David most strongly argues that the loans cannot be joint tenancy assets because there is no written evidence he promised to pay the debt to his parents as joint tenants with the rights of survivorship.

Damon and Darcy claim there is no legal authority to support David's contention that a third-party debtor can determine the existence or nonexistence of a joint tenancy between the makers of a loan. They further argue the loans to David made from joint tenancy funds retained the character of joint tenancy property, relying on *In re Estate of Biege,* 183 Kan. 352, 327 P.2d 872 (1958).

David contends *Biege* is distinguishable from the present situation.

It is recognized that joint tenancy ownership may apply to personal as well as real property. *In re Estate of Girndt,* 225 Kan. 352, Syl. ¶ 1, 590 P.2d 1038 (1979); *Winsor v. Powell,* 209 Kan. 292, 299, 497 P.2d 292 (1972).

Under common law, four unities had to be present to create a joint tenancy: interest, title, time, and possession. *Simonich, Executrix v. Wilt,* 197 Kan. 417, 421, 417 P.2d 139 (1966).

The loans to David originated primarily from three bank accounts. The record on appeal reveals two bank accounts were held by Robert and Aileen as joint tenants with the right of survivorship and the third account was a savings account. The trial court found that "[a]ll checking and savings accounts and all certificates of deposit were held by Robert and Aileen as joint tenants with rights of survivorship."

Since all loans made to David originated from jointly held funds, the determinative question is whether such ownership in the loans continued.

The property involved in *Biege,* 183 Kan. 352, was real estate owned in joint tenancy with rights of survivorship. The land was sold by the Bieges on an installment contract, with all payments to be made to an escrow bank and deposited in their account held in joint tenancy with rights of survivorship. The contract, however, contained no provisions that the right to receive the contract payments was held in joint tenancy.

The executors of Mrs. Biege's estate sought to recover half of the proceeds collected in the account from payments made after

her death. The executors contended that a tenancy in common was created because the contract of sale did not specify otherwise and because the sale severed the joint tenancy.

Justice Wertz, speaking for the Kansas Supreme Court, opined:

"We do not agree that a mere change in the form of property is conclusive proof of an intent to sever a joint tenancy or that such a change destroys unities between joint tenants. In the instant case no unities were destroyed but, rather, the character of the property was changed. . . . Under the statute (58-501) the intent of the parties and not the fact of a change in the form of the property controls." 183 Kan. at 355.

Justice Wertz continued:

"Changing the form of the property is an act unrelated to the holders' status as joint tenants. Joint tenancy is a relationship between certain people who have as a result of that tenancy certain rights in the *res*. . . . [A] mere agreement by persons entitled as joint tenants to convert their property from one species to another does not operate to work a severance.

"It was stated in *Fish v. Security-First Nat. Bank*, 31 Cal. 2d 378, 189 P.2d 10, 15, that, 'The proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired.'

. . . .

"It would appear that in view of our statute a joint tenancy is severed only in the manner in which it was created, *i.e.*, by the clear intent of the parties." 183 Kan. at 355-56.

The court held that Mr. Biege as the surviving joint tenant became sole owner of the legal title to the real estate and all rights under the installment sales contract.

We hold that *Biege* is dispositive of this issue. It was not shown that Robert and Aileen wished to change the joint tenancy character of the monies loaned to David. All of the evidence was to the contrary. Holding David's loans remained owned by Robert and Aileen as joint tenants with rights of survivorship is a logical extension of the *Biege* decision and is required by the facts in this case.

K.S.A. 58-501 is not applicable in this situation as David did not "grant or devise" property to Robert and Aileen within the meaning of that statute.

The trial court properly held that the loans remained owned by Robert and Aileen as joint tenants with rights of survivorship and not as tenants in common.

*Did the trial court err in determining the method by which the loans would be set off against David's distributive share of the estate?*

To give effect to its ruling, the trial court ordered an amount equal to David's debt plus interest thereon added to Aileen's estate, the equal one-third distributive share of each brother be calculated, and the amount of David's debt plus interest set off against his distributive share with the balance distributed to him and the remaining undiminished shares distributed to Damon and Darcy.

David contends this procedure violates the direction set forth in *In re Estate of Wernet,* 226 Kan. 97, 108-09, 596 P.2d 137 (1979). He also raises a statute of limitations argument as to the indebtedness.

This statute of limitations argument is without merit. *Holden v. Spier,* 65 Kan. 412, 416, 70 Pac. 348 (1902), holds the statute of limitations cannot be interposed when the question is whether the indebtedness of an heir shall be retained out of his distributive share. See *Wernet,* 226 Kan. 97, Syl. ¶ 7.

Although it is true *Wernet* stated that a nephew's indebtedness was not an "asset" in determining the total valuation of the estate, the indebtedness is to be calculated and set off against the debtor's share of the estate. 226 Kan. at 108-09.

The theory under which the debt of a distributee is collected is founded on the principle that the administrator or executor has an equitable lien on the share of the distributee until he or she discharges the obligation owed to the estate. *Holden,* 65 Kan. at 418.

*Wilson v. Channell,* 102 Kan. 793, 796, 175 Pac. 95 (1918), held: " 'The heirs of a decedent, whether lineal or collateral, take their distributive share of the estate subject to all existing equities in favor of the estate against them personally and against any of those from whom they inherit.' "

The indebtedness of David to the estate is regarded as assets of the estate already in his hands and his legacy or share is to that extent satisfied. See *Wernet,* 226 Kan. at 108; *Holden,* 65 Kan. at 416.

It makes no difference whether the computation is accomplished as *Wernet* suggests or in the manner utilized by the trial court because the result is the same. David's entire obligation must be paid because, as *Holden v. Spier*, 65 Kan. at 417, states: " 'It is against conscience that you should take anything out of the estate until you have made good what you owe it.' "

Affirmed.