NOT DESIGNATED FOR PUBLICATION

No. 120,376

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARY ANNA BROWN,
*Appellant*,

v.

JIM W. VANNOSTER, TAMMIE K. VANNOSTER,
and Estate of TERRY V. BROWN, by TAMMIE VANNOSTER,
Executor Named in Last Will and Testament of TERRY V. BROWN,
*Appellees*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY GETTLER, judge. Opinion filed October 25, 2019. Affirmed.

*W. J. Fitzpatrick*, of Fitzpatrick & Bass, of Independence, for appellant.

*Danielle D. Cornejo*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellees.

Before ATCHESON, P.J., MALONE, J., and DANIEL D. CREITZ, District Judge, assigned.

PER CURIAM: Terry V. Brown and his wife Mary sold land to Tammie and Jim Vannoster, his daughter from a previous marriage and her husband, on contract calling for a down payment and annual installments for seven years. Terry died before the Vannosters paid all of the installments. Mary filed this action in the Montgomery County District Court to determine if she was legally entitled to the remaining payments because

1

she had been identified in the contract as a seller, along with Terry, even though she had no ownership interest in the property.

After Mary filed a motion for summary judgment seeking a judicial declaration in her favor, the lawyers for the parties advised the district court that the documents and other materials already in the record composed the universe of relevant evidence, and they requested a ruling on the merits without further proceedings. The district court entered a 10-page memorandum and order denying Mary's summary judgment motion and dismissing the action with prejudice, effectively ruling against her on the merits. Mary has appealed.

We find that the district court, at the parties' invitation, conducted a bench trial on the evidentiary record and some undisputed background facts in ruling against Mary. As we explain, the evidence and the law support the district court's judgment. We, therefore, affirm the ruling denying relief to Mary and the judgment dismissing this case.

FACTUAL AND LEGAL POSTURE OF APPEAL

We begin with a condensed account of the background facts, since the parties are familiar with the details and much of that detail has no direct bearing on the legal issue at hand. Terry and Mary married in 2011. They had a prenuptial agreement under which Terry retained sole ownership of identified tracts of land, including the property eventually sold to the Vannosters. Terry later deeded some of the tracts to himself and Mary, typically as joint tenants with a right of survivorship, thereby giving her an ownership interest in those parcels.

In August 2014, Terry and Mary entered into the land contract selling the Vannosters approximately 66 acres in Montgomery County. The land surrounded a smaller tract that Terry and Mary owned as their homestead. At the same time as the land

2

sale, Terry deeded 12 acres, including the homestead, to himself and Mary, as joint tenants.

The land contract required a down payment of about $15,000 from the Vannosters to be followed by seven annual payments of about $11,900 each. The contract identifies Terry and Mary as "seller," the term then used throughout the contract. The Vannosters are correspondingly identified as "buyer." The five-page contract outlines various reciprocating rights and duties of buyer and seller. The contract states that it binds "the successors and assigns of the parties." But it is silent about how the annual payments were to be made if Terry (or Mary, for that matter) died during the seven-year term.

As part of the transaction, Terry and Mary signed a general warranty deed transferring the land to the Vannosters, and the Vannosters signed a quitclaim deed to Terry and Mary. Both deeds were placed with an escrow agent. If the Vannosters fully performed under the contract, they would receive the warranty deed. If they materially breached, the quitclaim deed would be given to Terry and Mary for filing.

When the case was presented to the district court for resolution, everybody agreed that Mary had no ownership interest in the 66-acre tract immediately before the sale to the Vannosters. They also agreed the Vannosters made the annual installment payments before Terry died in late 2016. They have since paid the installments into court awaiting the resolution of this legal dispute. The Vannosters delivered a check payable to Terry for the 2016 installment, and he deposited the check in a bank account he jointly owned with Mary.

As we have indicated, Mary filed a motion for summary judgment requesting a declaration that the installment payments due after Terry's death should be paid to her because the land contract implicitly created a joint tenancy with a right of survivorship by identifying her as a seller. Alternatively, she suggested the contract created a tenancy in

3

common so half of each installment would go to her and half to Terry's estate. The Vannosters basically countered that Mary had no ownership in the land and nothing in the contract changed that. They argued she had been included as a seller simply to extinguish any inchoate rights she might have in the land as a surviving spouse.

The district court ruled against Mary in March 2018 and dismissed the case, some 10 months after it had been filed. Mary filed a motion to reconsider, prompting a response from the Vannosters and several supplemental submissions to the district court. The district court filed a four-page memorandum in November 2018 denying Mary's motion to reconsider. In that memorandum, the district court pointed out that "[b]oth Plaintiff and Defendants stipulated and agreed that neither party intend[ed] any further discovery and the issues in this case are issues of law based on the written documents, and there are no issues of fact."

The record on appeal consists of the papers the parties filed in the district court with the accompanying exhibits and the district court's rulings, including those denying Mary relief and rejecting her request for reconsideration. There were no evidentiary hearings, and the parties have included no transcripts from any proceedings in the district court.

The district court's memorandum and order dismissing the case lacks a precise description of the procedural progression leading to that decision. The remainder of the record inferentially offers guidance to us on what the parties wanted and what the district court provided in its final ruling. In opposition to Mary's motion for summary judgment, the Vannosters filed a response asking the district court to deny her relief. Although they did not file a cross-motion for summary judgment, they did ask the district court to dismiss the case in the concluding sentence of their response.

The district court did not indicate it treated those filings as cross-motions for summary judgment. In that situation, a district court must look at each motion independently and give the nonmoving party the benefit of both any material factual disputes and any inferences reasonably drawn from the facts. So the proper course would be to deny both motions in favor of a trial if there were disputed facts precluding judgment on each motion. See *Stormont-Vail Health Care, Inc. v. Board of Shawnee County Comm'rs*, No. 112,811, 2016 WL 2772859, at *3, 5-6 (Kan. App. 2016) (unpublished opinion) (outlining procedure for deciding cross-motions for summary judgment). In short, cross-motions do not afford the district court a license to decide a case on summary judgment.

But, as the district court explained in its ruling on Mary's motion to reconsider, the parties had agreed all of the relevant evidence—consisting of documents and stipulated or undisputed facts—had been submitted for consideration and the parties wanted a final ruling based on that evidence. In effect, the parties asked the district court to sit as a fact-finder in a bench trial on that evidentiary record if Mary were not entitled to summary judgment. Cf. 2016 WL 2772859, at *5 (absent agreement of parties, district court could not consider summary judgment record as complete body of evidence and enter judgment as fact-finder in bench trial on that record). In a bench trial, a district court can, of course, draw reasonable inferences for or against either party as the evidence permits. We review the case in that light on appeal.

LEGAL ANALYSIS

On appeal, Mary reprises arguments she presented to the district court. She contends her inclusion as a "seller" in the land contract either gives her an ownership interest in the land as a matter of law or establishes that Terry otherwise intended she have an ownership interest in the land or the sale proceeds. The district court rejected those arguments. As we explain, we see no error.

5

Mary cites K.S.A. 58-501 to support her claim. That statute provides that "a grant or devise to a husband and wife" of real or personal property creates a tenancy in common unless the language shows a clear intent to create a joint tenancy. But the land contract to the extent it devised or granted the property did so to the Vannosters—not Mary and Terry. So the statute doesn't apply in the way Mary would like it to. And the money the Vannosters agreed to pay for the land doesn't constitute a devise or grant to Mary and Terry, giving her some legal right or interest in the proceeds.

We find *In re Estate of Biege*, 183 Kan. 352, 327 P.2d 872 (1958), to be instructive. In that case, a husband and wife sold real property they owned as joint tenants with a right of survivorship. They sold the land on contract with the buyers making monthly payments to them for an extended period, similar to the transaction here. The wife died during the term of the contract, and the executor of her estate sued to recover half of the outstanding payments, arguing that because the contract was silent about the proceeds they should be treated as an asset held in common and, thus, without a right of survivorship. The Kansas Supreme Court rejected the executor's argument and recognized that absent an express agreement to the contrary, the joint tenancy was unaffected by the substitution of the sale proceeds for the real property. In addition, the court pointed out that during the term of the contract, the sellers continued to hold legal title to the land and did so as joint tenants. 183 Kan. at 357. The court stated the governing principle, in light of the facts, this way: "The proceeds of joint tenancy property, in the absence of a contrary intention, retain the character of the property from which they are acquired." 183 Kan. 352, Syl. ¶ 3.

We see no reason that an analogous result would be inappropriate here. That is, sales proceeds would commonly and logically be divvied up in proportion to ownership interests in the property sold. And the notion supports the conclusion that because Mary had no ownership interest in the land, she likewise had no ownership interest in the

6

proceeds absent Terry's expressed intent otherwise. Indeed, if silence in a contract of sale does not change the character of the ownership interest in the property sold, then a fortiori that same silence cannot *create* an ownership interest where there was none.

Mary fishes around on appeal for other arguments to support her claim. For example, she suggests her inclusion as a seller must have had some legal significance. The Vannosters counter that under K.S.A. 59-505, a surviving spouse has a claim for a half interest in any land the deceased spouse possessed during the marriage unless the survivor has given written consent to the sale or other disposition of the land. Mary's inclusion as a seller, therefore, signified her consent to the transaction and her relinquishment of her inchoate statutory survivor's interest. But Mary replies that her identification in and signature on the warranty deed waived her survivor rights under K.S.A. 59-505, so her inclusion in the land contract must have been for some other purpose. We are unpersuaded. Mary could have signed a third writing separate from the land contract and the deed consistent with K.S.A. 59-505. But that wouldn't impute some different legal significance to either the contract or the deed. The law often revels in redundancy. See Golden, *Redundancy:  When Law Repeats Itself*, 94 Tex. L. Rev. 629, 629 (2016) ("[L]egal redundancy in the form of functionally overlapping language, doctrines, processes, and institutions remains ubiquitous."). The inclusion of Mary in both the contract and the deed looks to be a belt-and-suspenders approach to the transaction absent something directly suggesting a different and more particularized purpose.

Moreover, simply identifying Mary as a seller in the land contract would be a peculiar and obscure way for Terry to give her either an ownership interest in the real estate or a right to a portion of the sale proceeds. Terry had regularly used deeds to convey joint tenancy interests to Mary in real property he owned. He did so with a tract contiguous to the land sold to the Vannosters—a conveyance he made at the same time as the sale. Terry's failure to do so with the 66 acres at issue here is a telling indication of

7

his intent *not* to convey an ownership interest to Mary. Likewise, had Terry intended to insure that Mary would receive the installment payments if he were to die before the completion of the contract, he could have included a provision to that effect. Since the payments were spread over seven years, his death in that time, though not probable, certainly was foreseeable. The omission of language altering the initial terms of an otherwise detailed contract to account for a foreseeable contingency may be indicative of an intent against that alteration. That's a reasonable inference. It's at least as reasonable as an inference that Terry and whoever drafted the contract simply neglected to address a contrary intent that Mary receive the installment payments if he died, especially absent some corroborating indicator he actually harbored such an intent.

Mary tries to bolster her position by arguing Terry must have intended that she share in the sale proceeds because he deposited checks from the Vannosters in their joint bank account. But the connection Mary draws between Terry's purported intent and his conduct in cashing the checks is so attenuated as to be speculation bordering on make believe. Terry presumably would have said or done something more concrete if he wanted to confer a legally enforceable financial benefit on Mary from the land sale to the Vannosters.

In sum, the evidence reasonably supports the district court's judgment against Mary on the merits of her claim that she had a right to all or some portion of the installment payments due on the contract after Terry's death.

In buttoning up our review of this case, we mention that the Vannosters invited the district court to recognize an evidentiary presumption that a spouse without an ownership interest in land who simply appears as a seller or grantor in a contract or deed acquires no legal interest in the land or the sale proceeds. The district court accepted the invitation and applied such a presumption in ruling against Mary. The Vannosters have extended the same invitation to us. We decline and suggest the district court may have acted

8

improvidently. But our declination and suggestion do not affect the outcome here, since there was enough evidence apart from the evidentiary presumption to support the district court's ruling.

An evidentiary presumption operates this way: If a party proves Fact A, then the fact-finder must presume Fact B to be true. See K.S.A. 60-413; 31A C.J.S. Evidence § 204. For example, in Kansas, there is a presumption of marital paternity. K.S.A. 2018 Supp. 23-2208(a)(1). So if a man and woman are married (Fact A), the husband is considered or presumed to be the father of any child born during the marriage (Fact B). Most evidentiary presumptions are rebuttable, meaning the presumed fact may be disregarded in the face of sufficient contrary evidence. K.S.A. 60-414. The presumption of marital paternity may be rebutted by clear and convincing evidence a husband is not, in fact, the father of the wife's child. K.S.A. 2018 Supp. 23-2208(b). An evidentiary presumption may be created by statute, like the marital paternity presumption, or by judicial ruling, see *In re Estate of Mettee*, 237 Kan. 652, 653, 702 P.2d 1381 (1985) (if will known to be in possession of testator cannot be found after his or her death, common-law recognizes rebuttable presumption testator revoked it).

Kansas has no evidentiary presumption of the sort the Vannosters advanced here, as they and the district court acknowledged. They rely heavily on *Hendricks v. Wolf*, 279 Mich. 598, 273 N.W. 282 (1937), in support of such a presumption. But we do not read *Hendricks* that way. The salient facts are quite similar to those here. A married couple sold a tract of land on contract. The wife was identified as a seller, although the husband alone owned the land. The husband died before the buyer made all of the payments on the contract. The wife sued the executor of her husband's estate on the theory her identification in the land contract evinced a gift from husband to her of a half interest in the land. The Michigan Supreme Court rejected the argument in a single paragraph with this explanation: "In the absence of a showing to the contrary, it must be presumed that

9

plaintiff joined in the execution of the contracts for the purpose of barring her inchoate dower rights." 279 Mich. at 602.

The Vannosters have fastened on the word "presumed" to read *Hendricks* as recognizing an evidentiary presumption. Nothing in the court's opinion refers to, let alone develops, an evidentiary presumption. The wording more naturally seems to mean that unless a contract expressly gifts an interest in the land, nobody should infer or assume such a gift without something more, especially since a nonowner spouse logically could be included to release any inchoate probate right. A discussion of a reasonable inference that may be drawn from a set of the facts is quite different from creating a common-law evidentiary presumption mandating the finding of a presumed fact. See *Shim v. Rutgers*, 191 N.J. 374, 386, 924 A.2d 465 (2007) (outlining difference between reasonable inference and evidentiary presumption). Had the *Hendricks* court meant to adopt an evidentiary presumption, it would have stated as much and endeavored to define the predicate fact to be proved and the resulting fact to be presumed from that proof. Maybe the court actually did so with an economy of expression that regularly eludes us in our decisions. But we are disinclined to take that view.

From our perspective, *Hendricks* actually relies on an inference—not an evidentiary presumption—much like the general precept we derive from *Estate of Beige*. That is, we may reasonably infer (but need not automatically conclude) sellers identified in a land contract intend to divide the proceeds consistent with their ownership interests, absent some contrary indication.

Moreover, we aren't persuaded compelling policy reasons or the benefits of streamlined proof favor an evidentiary presumption. Neither the circumstances of this case nor the limited debate on this point instill in us some urgency to decide the matter now. So we leave the definitive consideration of such a presumption for another panel in another case. Even if we were disposed to recognize an evidentiary presumption, a fair

10

argument would support applying it only prospectively to contracts made after that recognition. Before then, the contracting parties would have had no reason to take account of a nonexistent presumption in negotiating and memorializing their agreements. So it would be unfair to impose that presumption in construing their agreements. See *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1367 (Fed. Cir. 2005) (court applies material change in evidentiary presumption prospectively only); cf. *Allentown Mack Sales & Service, Inc. v. N.L.R.B.*, 522 U.S. 359, 378, 118 S. Ct. 818, 139 L. Ed. 2d 797 (1998) (evidentiary presumptions "in effect substantive rules of law"); *Kelly v. VanZant*, 287 Kan. 509, 521, 197 P.3d 803 (2008) (statutes affecting substantive law or rights applied prospectively).

Affirmed.