No. 47,889

ALICE M. COE, Administratrix of the Estate of Max E. Coe, *Appellant*, v. FIRST NATIONAL BANK AND TRUST COMPANY, *Appellee.*

(548 P. 2d 486)

Opinion filed April 10, 1976.

*Robin L. Wick*, of Great Bend, argued the cause and *Raymond L. Dahlberg*, of Turner and Hensley, Chartered, was with him on the brief for appellant.

*Donald L. Burnett*, of Smith and Burnett, of Larned, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a summary judgment in favor of the defendant. We affirm.

The undisputed facts may be briefly summarized. Max Coe, and Alice M. Coe, his wife, intended to remodel their home and, on several occasions, talked with Mr. Grove of the First National Bank & Trust Company in Larned, Kansas, about borrowing $4,000 to finance the remodeling. A promissory note, security agreement and mortgage dated May 6, 1972, were prepared by the bank. On May 12, 1972, Max Coe and his wife went to the bank, examined these documents and signed them in the presence of Lola Mae Gilkison, a bank employee. Max Coe signed the portion of the promissory note indicating that he desired credit life insurance. Mrs. Gilkison then started to prepare a deposit slip to deposit the loan proceeds of $4,000 into the Coes' joint bank account. Before she could complete the deposit, Max Coe stated, "don't advance any proceeds," and instructed her not to do anything until

he came back to discuss the matter further with Mr. Grove, a week from the following Saturday. Mrs. Gilkison followed Max Coe's instructions and did nothing further. The loan proceeds were not advanced and a certificate of credit life insurance was not prepared and forwarded to the insurance company. Later that same day, Max Coe was injured in an automobile accident and subsequently died from such injuries.

Shortly after Max Coe's death, the plaintiff-appellant requested her son to instruct the bank to cancel the loan. This was done. Later, the appellant also confirmed with the bank that she wanted the loan cancelled. Acting pursuant to the instructions of the appellant's son and the appellant herself, the defendant destroyed the promissory note, security agreement and mortgage by tearing them in two.

On February 20, 1973, Alice M. Coe, Administratrix of the estate of Max Coe, filed suit to recover the sum of $4,000 on the theory that she was the lawful beneficiary of the credit life insurance which she assumed was issued to cover the alleged loan. Her petition alleged that plaintiff and her deceased husband had a binding loan agreement with the bank which included a request for the issuance of credit life insurance, that the loan agreement was fully executed and had never been lawfully cancelled, and that plaintiff, as the lawful beneficiary of the credit life insurance the bank was obligated to procure pursuant to the loan agreement, was entitled to the benefits.

In its answer, the defendant bank denied there was a completed loan agreement and that plaintiff was the lawful beneficiary of the requested credit life insurance policy. Defendant stated that credit life insurance is in effect only on proceeds advanced under a loan agreement, and such insurance is not issued until loan proceeds are disbursed to the borrower. Defendant further stated that Max Coe had instructed the defendant not to process the loan or advance the proceeds until further instructions. Since he died without giving further instructions, the loan agreement was never completed. Finally, the defendant stated that if the loan is found to have been completed, then the *defendant bank* is the beneficiary entitled to all credit life insurance proceeds.

The plaintiff then filed her motion for summary judgment. The district court found that the motion was properly before it and that there was no dispute as to any material fact; it then proceeded to

render summary judgment for the defendant. The court stated its conclusions in the journal entry:

"The issue in this case, simply stated, is whether there was, in fact, a completed contract between plaintiff and the deceased husband and the Defendant bank at any stage of the transaction. The Court finds that there was never a completed contract at any state of the above transaction.

"When the Plaintiff's deceased husband advised the Defendant bank not to advance proceeds until he further discussed the matter with an officer of the Defendant bank, this action stayed the completion of the contract until a later time. On the date of signing the note and mortgage, the Defendant bank was ready to perform, but the deceased, Mr. Coe, asked the Defendant to refrain from completing the contract because he wanted to discuss the matter further. As a result, there was no meeting of the minds between the Parties.

"The issue of credit life insurance, if any, is in no way involved in the ultimate determination of this litigation. The existence of a contract, the meeting of the minds, the intention to assume an obligation and the understanding, are to be determined, not alone from the words used, but also from the situation, acts and conduct of the Parties, together with the attendant circumstances.

"Plaintiff's authority regarding the distinction between the completion of a contract and its performance are not applicable in this case. Plaintiff's authorities relate to a completed contract and in the instant case the Court finds that as the Plaintiff's decedent stated that he wanted to talk some more about the loan transaction, there was some question in his mind relative to the matter, and as a result, there was no meeting of the minds and no completed contract.

"The Court on its own motion is granting summary judgment to the Defendant."

On appeal, the appellant contends she should have been granted summary judgment on the basis that a complete contract existed between the plaintiffs and the defendant on May 12, 1972, the day the loan instruments were signed.

We cannot agree with the appellant's contention.

Mr. Coe, the borrower, specifically instructed the bank that no loan proceeds were to be advanced and nothing further done on the loan until he had talked with Mr. Grove. He had no obligation to the bank until the money to be loaned was advanced. Likewise, the bank had no obligation and no right to advance the money to be loaned until Mr. Coe talked with the officer of the bank a week from the Saturday following May 12, 1972.

The transaction in the instant case has been characterized as a contract between the parties. We think the transaction involved a proposed loan from the bank to the Coes. A loan of money has been defined as a contract by which one delivers a sum of money to another and the borrower agrees to return at a future time a sum equivalent to that which he borrowed, usually with interest. See,

54 C. J. S. *Loan* 656. In *Tiernan v. Carasaljo Pines*, 51 N. J. Super. 393, 404, 143 A. 2d 892, it was said:

".    .    . A loan of money is a lending, on one side, and a borrowing on the other. The conception of loaning money is well understood and the incidents pertaining to an agreement for the loan of money are few and simple: an advancement of money by the lender at the time of agreement, and a stipulation or agreement to repay it and generally with interest, at a future date, by the borrower."

A loan is made when the borrower receives money over which he exercises dominion and which he expressly or impliedly promises to return. One of the elements of a loan is delivery of the money so that the borrower may exercise dominion and ownership over it. See, *Fleming v. Becker*, 14 Ariz. App. 347, 483 P. 2d 579 (Ct. App. 1971); *Barnes v. Hartman*, 246 Cal. App. 2d 215, 54 Cal. Rptr. 514 (Dist. Ct. App. 1966); 54 C. J. S. *Loan* 656.

Clearly, there was no completed loan in the instant case because no funds were advanced and paid to the Coes as borrowers. The Coes had no dominion or control over the loan proceeds. It follows that the bank could not have held the Coes for repayment of the $4,000, because the Coes had never received such a loan.

Moreover, signing the instruments and leaving them with the bank did not constitute a binding agreement under the circumstances. The maker of a promissory note may deliver it to the payee upon condition that it shall not become a binding obligation except upon the happening of a certain event. See 11 Am. Jur. 2d Bills and Notes § 281.

"Delivery of an instrument may be conditional and, as between immediate parties    .    .    . such fact may be shown even though the condition is an oral one, if it is a condition precedent.    .    .    . [N]onperformance of a condition precedent renders the instrument void and wholly unenforceable as to such parties." (11 Am. Jur. 2d Bills and Notes § 279.)

In *Greenleaf State Bank v. Monteith*, 173 Kan. 799, Syl. ¶ 1, 252 P. 2d 621, it was held:

"As between the original parties to a negotiable instrument parol evidence is admissible to show that the delivery of the instrument to the payee was conditional, that is, to take effect only upon the happening of some future event."

We conclude the executed loan agreement left with the appellee bank was conditional and of no effect until the condition—*i. e.* Max Coe's futher instructions—was met.

The appellant asserts in the alternative that the district court erred in rendering summary judgment because there exists a dispute as to

a material fact concerning whether the parties intended the transaction to be completed at the time the instruments were signed and left with the bank. We do not agree.

The facts which we have presented are not in dispute and amply support the summary judgment of the district court.

The judgment is affirmed.